The Commercial Bank of Rochester *vs.* Colt & Shackleton.

Assignees of a warehouse receipt for grain can take no greater right or interest than their assignor possessed, and are chargeable with the same notice and with all the equities that would apply to him.

If he is chargeable with sufficient notice to put him on inquiry which would have led to a knowledge of the fraud of one of the makers of the receipt, it is the same, to him, as if full notice of such fraud, and the falsity of the receipt, had been proved upon him; and in that event, the same consequence attaches to the assignees.

The assignees are not protected as *bona fide* purchasers or holders, as in the case of commercial paper, but they take the assignment *cum onere*, and occupy no better position than would their assignor, in case he had not assigned the receipts.

Where a note and drafts were made by S., a member of the firm of C. & S., in his individual name, and discounted by the plaintiffs, for B., the payee of the note and acceptor of the bills, and the money was received by S. as an individual, and not as a member of the firm of C. & S., the transaction not purporting to be a partnership transaction; and B. indorsed and delivered to the plaintiffs, as collateral security for the payment of the note and drafts, three warehouse receipts, made by S. and signed with the name of the firm, which receipts falsely acknowledged the receipt of grain from S., subject to the order of B.; *Held* that B. had notice, or was bound to know, that S. was pledging the partnership effects, securities, or credit for his individual benefit; that the circumstances were sufficient to put him on inquiry as to the truth of the facts stated in the receipts; and that no recovery could be had against the firm, upon the warehouse receipts, by the plaintiffs as the assignees thereof.

This was an action to recover the value of 5200 bushels of wheat, against the defendants as copartners in the storage and warehouse business, under the name of Colt & Shackleton, and was founded upon three warehouse receipts for the wheat, signed by the defendant Shackleton, in the name of Colt & Shackleton. On the trial, at the Livingston circuit in May, 1852, before Selden, justice, the plaintiff introduced and read in evidence a note, two bills of exchange and three warehouse receipts, as follows:

"$1200. *Rochester, August* 28, 1851.

Ten days after date, I promise to pay E. N. Buell, or order,

twelve hundred dollars, at the Commercial Bank, Rochester, for value received.                    RICHARD SHACKLETON."

*Indorsed,* " E. N. Buell,
                    J. C. Stone."

" $2000.                    *Rochester, August* 16, 1851.

Twenty days after date, pay to the order of Geo. R. Clark, Esq. cashier, two thousand dollars at the Commercial Bank of Rochester, value received, and charge to the account of

RICHARD SHACKLETON."

To E. N. Buell, Rochester.

This was accepted, on the face thereof, by Buell. The other bill of exchange was in the same form, for a similar amount, drawn by and upon the same persons, and accepted by said E. N. Buell, and dated August 21st, 1851. The first of said warehouse receipts was in the words and figures following: "Received, in store, Piffard, August 11, 1851, from R. Shackleton, fourteen hundred bushels of wheat, subject to the order of E. N. Buell, of Rochester, free of charges.

1400 bush.                    COLT & SHACKLETON."

*Indorsed,* " E. N. Buell. "

The next receipt was in similar form, between the same parties, for twenty-four hundred bushels of wheat, dated August 16th, 1851, and indorsed by said E. N. Buell. The remaining receipt was also in similar form, between the same parties, for the same quantity of wheat as the last, dated August 21st, 1851, and indorsed by said E. N. Buell. It was admitted that the signature, "Colt & Shackleton," to the warehouse receipts, was in the handwriting of Richard Shackleton, and that the other signatures and indorsements on the note, bills of exchange and warehouse receipts were made by the parties respectively by whom they purported to have been made.

The plaintiff then called Eben N. Buell as a witness, who testified that the note of $1200, above set forth, was a renewal of a previous note of the same parties, for the same amount, dated the 11th of August, 1851. That this last mentioned note was discounted by the plaintiffs on the day of its date, at the

request of the witness, and at the same time the witness trans-
ferred by his indorsement thereon and delivered to the plaintiffs
as collateral security for the loan, and for the payment of said
note, the warehouse receipt of the 11th August, above set forth.
The money received from the plaintiffs was handed by the wit-
ness to R. Shackleton, on the same day. The witness further
testified that the bill of exchange of the 16th of August, 1851,
for $2000, was discounted by the plaintiffs on the day of its
date, at the request of the witness; and at the same time the
witness transferred and delivered to the plaintiffs the receipt of
the 16th of August, 1851, as security for the loan and payment
of the bill of exchange, and that the money received from the
plaintiffs was immediately paid over by the witness to Shackle-
ton. The witness further testified that the bill of exchange of
the 21st of August, 1851, for $2000, was discounted by the
plaintiffs on the day of its date, at the request of the witness,
and at the same time the witness transferred and delivered to
the plaintiffs the receipt of the 21st of August, as security for
the loan and for the payment of the bill of exchange. The
money received by the witness from the plaintiffs was immedi-
ately paid over by him to Shackleton. The witness Buell fur-
ther testified that the receipts were drawn by him, the witness,
at Rochester, and signed in his presence by Shackleton, and
that the defendant Colt was not present when they were exe-
cuted. That the several receipts mentioned were delivered to
him by Shackleton on the days on which they bear date respec-
tively, and that he, the witness, supposed that the wheat men-
tioned in the said receipts was actually in the warehouse of
Colt & Shackleton as represented in the receipts. He further
testified that no part of the wheat mentioned in the receipts had
ever been delivered to him.

The plaintiffs then gave evidence tending to show that the de-
fendants were copartners in the storage and warehouse business
at Piffardinia in the county of Livingston, under the firm of
Colt & Shackleton, from the 1st of January, 1847, up to and
subsequent to the making of the several receipts before stated.
The plaintiffs also gave evidence tending to prove that the de-

Commercial Bank of Rochester *v.* Colt.

fendants were also copartners in the purchase and sale of wheat and other produce during the same period, under the same firm of Colt and Shackleton. The plaintiffs further proved that they, by their agent duly authorized, made a demand of the wheat mentioned in said receipts, of the defendant Charles Colt, on the 10th day of September, 1851 ; and that said Colt refused to deliver the same ; and that the value of said wheat exceeded the sum of $5200 ; and the plaintiffs then rested. The defendant's then gave in evidence an agreement or articles of copartnership between themselves of which the following is a copy : "Articles of agreement made the first day of January, 1847, between Charles Colt and Richard Shackleton, both of the town of Geneseo, in the county of Livingston and state of New-York, witnesseth as follows, that is to say : the above named parties mutually covenant and agree, each with the other, that they will jointly rent a storehouse somewhere on the Genesee valley canal, and within         miles of the village of Geneseo in said county, for the storing of merchandise, for their joint benefit, and for the storing of such grain as shall be purchased by the parties hereto, as hereinafter mentioned, for the term of one year from the date hereof. And it is covenanted and agreed that the said parties will purchase wheat and other grain together for their joint benefit and with their joint funds, and on their joint credit, during one year from the date hereof, subject to the provisions and agreements herein contained. And it is further covenanted, that in the purchase of wheat and other grain, and in renting and conducting the storehouse as aforesaid, neither of the above named parties shall sign any note, draft, check, or bill of exchange, (except receipts for wheat and other grain,) by which the other party shall be bound as partner or otherwise, without the consent of such other party in writing for that purpose obtained. And it is further covenanted and agreed that the purchase of wheat and other grain jointly as aforesaid, may at any time during said one year, be determined and discontinued by either of the above named parties, by a notice in writing to the other party expressive of such determination. And it is further covenanted that the storehouse to be rented as aforesaid,

shall be used for storing the wheat and other grain of the par-
ties hereto, and for the storing of merchandise for hire, for other
persons; and that the profits and loss arising from such store-
house business and from the purchase of wheat and other grain
as aforesaid, shall be shared equally; and all the expenses at-
tendant thereupon shall be borne equally by the parties hereto.
And it is covenanted that each party shall at all times keep a
true account of all the business he shall do, and the expenditures
and expenses incurred, in pursuance of the covenants herein
contained, which account shall at all times be open to the exam-
ination of the other. And it is further covenanted that neither
party shall do any business in the name of the other that is not
expressed herein or necessarily inferred from what is expressed,
and that in the event of either party electing during the afore-
said one year, to discontinue the purchase of wheat and other
grain jointly as aforesaid, the business of storing merchandise
as aforesaid for others shall not be affected thereby. And it is
further covenanted and agreed that each party shall account
with the other whenever requested, for all moneys, expenditures,
expenses, payments, receipts, profits, advances and business,
made, done, performed, incurred, contracted or received.

Signed and sealed, the day and year first above written.

In presence of          CHARLES COLT.          [L. S.]

   H. H. Guiteau.          RICHARD SHACKELTON. [L. S.]"

The defendants then gave evidence tending to prove that the
partnership between them in the purchase of wheat and other
produce, terminated on the first day of January, 1848. It ap-
peared from the evidence that the defendants, some time in 1849,
and until after the 10th day of September, 1851, were the owners
of two-thirds of a warehouse situated at Piffardinia, and the
other third belonged to one Nichols. It also appeared that the
defendant Colt kept an office in the village of Geneseo, and that
wheat was purchased by him at Geneseo, and by the defendant
Shackleton, at Piffardinia. The defendants gave evidence tend-
ing to prove that all the wheat purchased by the defendant Colt,
at Geneseo, was purchased in his own name, and upon his own
account, and that the wheat purchased by the defendant Shack-

Commercial Bank of Rochester v. Colt.

leton at Piffardinia, was purchased by him in his own name and for his own account, and that none of said purchases made by either of the defendants were made on partnership account. It appeared that the wheat purchased by both Colt and Shackelton was stored in the warehouse above mentioned.

The defendant then gave evidence tending to prove that the wheat purchased by the defendant Colt at Geneseo, was stored in a separate bin in the said warehouse, and that the wheat purchased by the defendant Shackelton at Piffardinia, was also stored in a separate bin in said warehouse. The defendants also proved that there was no wheat in the warehouse on the first of August, 1851, but that several parcels of wheat had been purchased and put into the warehouse by Shackleton, and several parcels had been shipped and consigned to E. N. Buell at Rochester in the course of that month, and that the aggregate amount so shipped and consigned, exceeded the amount so received into the warehouse, but was all sent to Buell, to apply on receipts prior to those in question in this suit. No evidence was given to show how much wheat had been purchased and put into the warehouse by the defendant Colt during the periods before mentioned, nor any evidence to show whether there was any wheat there at the day above mentioned, which had been purchased and put in there by Colt.

The defendants having rested, the plaintiff gave evidence tending to prove that the partnership between the defendants as warehousemen, and in the purchase of wheat and other produce, had continued after the expiration of the term mentioned in the articles of copartnership above set forth, without any change of the mode of doing business, down to the time of making the receipts above stated, and particularly, that the manner of purchasing and storing the wheat so purchased, in the warehouse of the defendants, was the same after as during the year 1847. The plaintiffs also proved that the storage and warehousing business was during all the time from 1847 to the time of making the said receipts, done in the name of Colt & Shackleton, and that all the shipping bills, sent out from the said warehouse, were made and signed in the name of Colt &

Shackleton, and the shipping books kept at said warehouse were kept in that name.

The testimony being closed, the plaintiff's counsel requested his honor the circuit judge to charge the jury, 1. That the transfer and delivery of the warehouse receipts to the plaintiffs as proved in this case, and the advances or loans made by the plaintiffs on the faith of such transfer, vested the title to the wheat in question in the plaintiffs, and the judge so charged. 2. That the agreement of the first of January, 1847, constituted a partnership between the parties as warehousemen and dealers in produce, and the court so charged. 3. That if the jury were satisfied from the evidence that the business of the parties was conducted after 1847, down to the execution of the receipts in question, in the same manner as in 1847, the legal presumption was that the partnership continued upon the same terms and for the same objects as in 1847, and the court so charged. 4. That if the defendants continued to be partners, as in the last preceding proposition is claimed, at the times the receipts in question were given, then the defendants cannot set up or allege that there was no wheat in the warehouse at the times the receipts were given. The plaintiffs having advanced money upon the faith of the receipts and the admission therein contained, the defendants, and each of them, are estopped from denying that there was any wheat in the warehouse, at the time the receipts were given; and the court so charged. 5. That however the jury might find on the question whether the defendants were partners in the purchase of produce, yet if the jury were satisfied, from the evidence, that they continued to be and were partners at the time the receipts were given, in the storage or warehouse business, that would be sufficient to charge them as partners, in this action, and the defendants, and each of them, would be estopped as claimed in the preceding request. The court refused to charge as so requested, and the plaintiff's counsel excepted.

The court charged the jury, among other things, that if they found that the transactions between Shackleton and the witness Buell were the private transactions of Shackleton,

in which the defendant Colt had no interest, and to which he was in no way privy in fact, and the receipts were given without his knowledge, and the money was received by Shackleton, and applied to his separate use, then, although Buell and the plaintiffs might in good faith have supposed that they were dealing with the partnership, unless the jury were satisfied that the defendants were partners in the produce business, at the time the receipts were given, as well as in the warehouse business, the defendant Colt was not estopped from showing that there was not any wheat in the warehouse at the time the ·receipts were given. To which charge, as so given, the plaintiff's counsel excepted. The court further charged the jury, that if they were satisfied that all the wheat that was in the warehouse at the time the receipts or either of them were given, had been sent to Mr. Buell, although it was sent to apply on other receipts or accounts than the receipts in question, the liability of the defendant Colt would be the same as if there had been no wheat in the warehouse at the time the receipts were given. To this part of the charge the plaintiff's counsel also excepted.

The court further charged the jury, that although they should be satisfied that the defendant Colt had wheat in the warehouse at the time the receipts were given, that would not entitle the plaintiff to recover for the value of such wheat. That the jury must be satisfied, not only that there was wheat in the warehouse at the times the receipts were given, but that such wheat belonged to the defendant Shackleton, or to the defendants jointly, to entitle the plaintiff to recover, provided there was no partnership in the produce business, and the transaction with Buell was a private transaction of Shackleton, as before stated. To this part of the charge the plaintiff's counsel also excepted. The jury found a verdict for the defendants; and a motion was now made to set aside the verdict, and for a new trial.

*S. Mathews,* for the plaintiff.

*A. Worden,* for the defendant.

*By the Court,* WELLES, P. J.   The note for $1200, dated August 11th, 1851, to renew which, the note for the same amount, set forth in the bill of exceptions, was given, and the two drafts or bills of exchange for $2000 each, were discounted by the plaintiffs for and at the request of Buell, who at the same times indorsed and delivered to the plaintiffs the three warehouse receipts set forth in the bill of exceptions, as collateral security for the payment of the note and drafts.   It is to be assumed that the plaintiffs loaned these moneys, the avails of the note and drafts, upon the faith, in part at least, of the receipts.   It should also be assumed that at the times of discounting the note and drafts, the defendants were partners in the storing and warehouse business ; because evidence was given tending to establish that fact, and the judge charged the jury that if they found that the transactions between Shackleton and the witness Buell, were the private transactions of Shackleton, in which the defendant Colt had no interest, and to which he was in no way privy in fact ; and the receipts were given without his knowledge, and the money was received by Shackleton and applied to his separate use, then, although Buell and the plaintiffs might, in good faith, have supposed that they were dealing with the partnership, unless the jury were satisfied that the defendants were partners in the produce business at the time the receipts were given, as well as in the warehouse business, the defendant Colt was not estopped from showing that there was not any wheat in the warehouse at the time the receipts were given.   It amounts to this ; that if, at the times the receipts were given, Colt and Shackleton were not partners in the produce business, although they were partners as warehousemen, Colt was not liable ; but that if they were partners in the produce business he was liable.

I am not able, I confess, to understand why Colt's liability should be different in case he and Shackleton were partners in the produce business, from what it would be if they were partners as warehousemen.   The receipts are proper warehouse receipts, and signed by Shackleton with the firm name of Colt & Shackleton, and if they were partners of the latter descrip-

tion, in the business of warehousemen, at the time the receipts were executed, they are both, *prima facie*, equally liable, as it seems to me, as if they were partners in the produce business; and if the fact that the receipts were untrue, and there was no wheat in the warehouse, as mentioned in them, will relieve Mr. Colt from accountability in the one case, I do not perceive why it will not in the other.

The position of the plaintiffs is, that he defendants in their character of warehousemen had received the wheat mentioned in the receipts which Shackleton had delivered, for, and which when received, was subject to the order of, and therefore to be treated as the property of Buell; and that Buell being so the owner of the wheat, assigned it to the plaintiffs in security for the money advanced on the note and drafts. That by the law respecting the relations of partners, Colt is not to be excused in consequence of the fraud of his partner Shackleton; that so far as innocent third persons are concerned, the receipts are to be regarded the same as if Colt knew of and approved the giving the receipts; and as the plaintiffs advanced their money upon the faith of the statements contained in the receipts and the transfer of them by Buell, both the defendants are estopped from denying such facts, or of showing the fraud of Shackleton. (*Story on Part.* §§ 105, 6, 7, 8.) This view of the question I think would be correct, and perhaps controlling, on the assumption that the defendants were partners at the times the moneys were advanced by the plaintiffs, except for the considerations which will be presently adverted to.

As the plaintiffs claim as assignees of Buell, they can take no greater right or interest than Buell possessed, and are chargeable with the same notice, and with all the equities that would apply to him. If he is chargeable with sufficient notice to put him on inquiry which would have led to a knowledge of the fraud of Shackleton, it is the same to him as if full notice of such fraud, and the falsity of the receipts, had been proved upon him; and in that event, the same consequence attaches to the plaintiffs. They are not protected as *bona fide* purchasers or holders, as in the case of commercial paper, but they took the assign-

ment *cum onere*, and occupy no better position than would Buell, in case he had not assigned the receipts, but had paid the note and drafts, as indorser of the former, and acceptor of the latter. To hold one partner liable for the acts of his copartner, such acts must have been done in the name of the firm and within the scope of the partnership. In this case, the principal transaction was the making of the note and drafts and receiving the money. These were concurrent with the giving of the receipts. The note and drafts were made by Shackleton in his individual name; and the money received by him as an individual, and not as a member of the firm of Colt & Shackleton. The making of the note and drafts and receiving the money, did not purport to be a partnership transaction. The receipts were written by Buell at Rochester, where the whole transaction took place, which was a different place from that where the warehouse was situated, and where the partnership business of Colt & Shackleton was done. One partner has not the right to pledge the partnership effects or securities or credit, for his individual and private use and benefit. Mr. Buell knew or was bound to know that Shackleton was doing or attempting to do thus; and it was sufficient to put him on the inquiry, with a view to ascertain the truth of the facts stated in the receipts, whether Shackleton had in fact delivered the wheat into the storehouse, or in store, as the receipts purported. If he had made such inquiry, as I think he was bound to do, he would have discovered the fraud, and that the receipts were all a mere cheat, a fiction got up to enable him to raise money. (*Bank of Rochester* v. *Bowen*, 7 *Wend*. 158. *Joyce* v. *Williams*, 14 *Id*. 141. *Boyd* v. *Plumb*, 7 *Id*. 309. *Wilson* v. *Williams*, 14 *Id*. 146.)

Upon the whole, I think the plaintiffs have no reason to complain of the rulings at the circuit; and that a new trial should be denied.

Ordered accordingly.

[CAYUGA GENERAL TERM. June 6, 1853. *Welles, Selden* and *T. R. Strong*, Justices.]